## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
_____

Gary Cox and Jill Cox,

                Plaintiffs,

vs.                                     Civil Action No. 10-4626 (DSD/SER)

Mortgage Electronic Registration
Systems, Inc. and Aurora Loan Services, Inc.

                Defendants**.**
_____

### MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND
### AURORA LOAN SERVICES, LLC'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION TO DISMISS
_____


## INTRODUCTION

    Defendants Mortgage Electronic Registration Systems, Inc. and Aurora Loan

Services, Inc. (collectively "MERS") respectfully request the Court grant their Motion to

Dismiss/Motion for Summary Judgment. Plaintiffs' Complaint fails to state a claim for

which relief can be granted and Defendants are entitled to judgment as a matter of law.

Plaintiffs have attempted to bring several state law claims in order to avoid a foreclosure

of their property.  All of these claims, however, are based upon a valid denial of a

mortgage modification under the Home Affordable Mortgage Program, established under

the Emergency Economic Stabilization Act of 2008.  What is clear from the provisions of

the EESA and HAMP is that there is no private cause of action available to Plaintiffs.

    Further, Plaintiffs cannot maintain a cause of action for a breach of any implied

duty under the Mortgage, negligent misrepresentation, or fraud.  All communications

from Aurora have been true and consistent.  The mortgage was foreclosed, not because of any wrongdoing on the part of MERS, but are attributable to action or inaction on the part of Mr. and Ms. Cox.  They failed to make payments pursuant to a trial modification and did not provide Aurora with the required paperwork.  As a result, Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

## FACTS

Plaintiffs, Gary and Jill Cox, owned property commonly known as 13047 Autumn Rdg, Becker, MN 55308 and legally described as Outlot F, Autumn Ridge, together with an easement for driveway purposes over Outlot E Autumn Ridge, Sherburne County, Minnesota ("Property").  (Affidavit of Christina M. Weber ("Weber Affidavit"), Ex. 1.)  In 2004, Mr. and Ms. Cox executed and delivered a mortgage to Mortgage Electronic Registration Systems, Inc. in the principal amount of $472,500.00 ("Mortgage").  (Id. at Ex. 2.)  The Mortgage secures the Property.  (Id.)  Aurora Loan Services, LLC currently services the Mortgage.  (Affidavit of Aurora Loan Services, LLC ("Aurora Affidavit").)

Mr. and Ms. Cox defaulted under the terms of the relevant note and the Mortgage. The Mortgage was initially referred to the law firm of Wilford & Geske, P.A. for foreclosure in May, 2009.  (Weber Affidavit at ¶ 4.)  The foreclosure was put on hold numerous times.  The sheriff's sale did not occur until October 4, 2010.  (Id. at ¶ 5.; Verified Complaint at Ex. D.)

Mr. Cox had numerous telephone conversations with Aurora during the pendency of his Mortgage default.  One of these conversations took place on January 14, 2010 at

which time Mr. Cox was advised that he needed to make trial payments under the trial modification that Plaintiffs had entered into on September 15, 2009 until there was a decision on a permanent modification. (Aurora Affidavit at ¶ 3.) Mr. Cox indicated he would make those trial payments. (Id.) Aurora subsequently received two payments from Mr. and Ms. Cox pursuant to the trial modification. (Id. at ¶ 4.) Those payments were received on January 19, 2010 and February 1, 2010. (Id.) These payments were not sufficient to reinstate the loan, but were made pursuant to the trial modification that was in place at that time. (Id.)

Shortly thereafter, Aurora determined using the relevant calculations under HAMP that Mr. and Ms. Cox did not qualify for a permanent modification. (Id. at ¶ 5.) Mr. and Ms. Cox were notified of this fact by letter, dated February 4, 2010. (Verified Complaint, Ex. A.) Aurora sent Mr. and Ms. Cox another letter on March 8, 2010. (Id. at Ex. B.) In this letter, Aurora informed Mr. and Ms. Cox that the loan was placed on a 30-day review period and that, "During this time you should continue to make monthly payments in the amount of your Trial Period Plan payments." (Id.) The letter also stated, "At the end of the 30 day review period, you will receive an additional written communication of the status of your modification. If at the end of the review period it is determined that you are ineligible for a HAMP loan modification, we will work with you to explore other available options." (Id.)

On March 25, 2010, Mr. Cox phoned in asking for status of the modification. He was advised to continue making payments and that he was still in review for a

modification.  (Aurora Affidavit at ¶ 7.)  On May 27, 2010, Aurora sent a letter to Mr. and Ms. Cox asking for missing documents that were needed to complete the modification review.  (Id. at Ex. 2.)  On June 15, 2010, the loan was denied for the modification because Aurora did not receive any of the documents requested.  (Id. at Ex. 3.)  A letter was sent stating this information.  (Id.)  On June 24, 2010, Aurora sent another letter outlining other options available to Mr. and Ms. Cox.  (Id. at Ex. 4.)  The letter also explained that collection efforts would not stop and that Mr. and Ms. Cox were still obligated to make their monthly mortgage payments.  (Id.)

Despite instructions from Aurora to continue making payments under the trial period modification, Aurora did not receive a payment from Mr. and Ms. Cox after February 1, 2010.  (Id. at ¶ 11.)  Mr. Cox contacted Aurora on October 11, 2010 at which time Mr. Cox was informed the sheriff's sale had taken place on October 4, 2010.  (Id. at ¶ 12.)  Mr. Cox was also informed that his only option during the six-month redemption period was to redeem the property or sell through a short sale.  (Id.)

## ARGUMENT

## I.  MOTION TO DISMISS AND SUMMARY JUDGMENT STANDARDS.

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. 5 Pro. 12(b)(6) (2007). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party and the facts alleged in the complaint must be taken as true. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994);

*Ossman v. Diana Corp.*, 825 F. Supp. 870, 879-80 (D. Minn. 1993). On the other hand, unsupported conclusions of fact or law are plainly insufficient. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007); *In re Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001).

With the United States Supreme Court's recent decision in *Twombly*, the standard established in *Conley v. Gibson*, 255 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" has "earned its retirement." *Twombly*, 127 S.Ct. at 1968, 1969. Under *Twombly*, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."   *Id.,* 127 S.Ct. at 1974. The complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. 127 S.Ct. at 1964-65. The new standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that would support the plaintiff's claim. *Id*. 127 S.Ct. at 1965.

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219-20 (8th Cir. 1992). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957. The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designated to secure the just, speedy, and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quotation omitted).

The evidence presented in support of or in opposition to a motion must be competent evidence admissible at any subsequent trial. *Miller v. Solem*, 728 F.2d 1020, 1026 (8th Cir. 1984). In ruling on a motion for summary judgment, the court should not consider evidence, such as inadmissible hearsay statements or vague, conclusory allegations, which would not be admissible as evidence at trial. *Id.* There is no genuine issue of fact for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. PLAINTIFFS' CLAIMS FAIL TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED. DESPITE THEIR LABELS, ALL SIX COUNTS INVOLVE THE HOME AFFORDABLE MORTGAGE PROGRAM. PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION UNDER HAMP.

Despite the fact Plaintiffs have articulated six causes of action, all of these counts involve one issue.  Plaintiffs seek relief because they were not offered a permanent modification under the HAMP program.  Plaintiffs are unable to bring a cause of action for an alleged violation of HAMP.  As a result, Mr. and Ms. Cox's Complaint must be dismissed in its entirety and with prejudice.

In October, 2008, President Bush signed the Emergency Economic Stabilization Act of 2008 ("EESA"), which is codified at 12 U.S.C. § 5201 *et seq.*.  The EESA, however, did not create a private right of action against servicers if there was a grievance under the EESA.  *Phipps v. Wells Fargo Bank, N.A.*, 2011 WL 302803 (E.D. Cal.); *Marks v. Bank of America, N.A.*, 2010 WL 2572988, *5 (D. Ariz. 2010); *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010).  Rather, the EESA authorized the various entities, including the Secretary of the Treasury, the Federal Housing Finance Agency, and the GSEs, Fannie and Freddie, to create the Making Home Affordable Program, which consists of the Home Affordable Refinance Program and the HAMP.  *Marks* at *5.  Freddie Mac services as the compliance officer for HAMP.  U.S. Dept. of Treasury, Supplemental Directive 2009-08, at 4 (Nov. 3, 2009).

There is no provision in the EESA or the HAMP guidelines that provides for a private cause of action if a servicer does not comply with the guidelines of HAMP. *Marks* at * 6.  Rather, it is clear Congress intended for Freddie Mac, one of the government-sponsored enterprises, to act as the compliance officer.  It has been held by several courts that by delegating authority to Freddie Mac, Congress expressly intended

to preclude a private cause of action from being asserted under HAMP.  *Id.*; *Phipps*  at *9 (*quoting ReyesGaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001) (reiterating that "the doctrine of expression unis est exclusion alterius instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.")); *Zoher v. Chase Home Financing, 2010* WL 4064798, *3 (S.D. Fla.).

Similarly, several jurisdictions throughout the United States have also held that the EESA and HAMP do not create an implied cause of action for borrowers.  *Id.*; *Marks* at *6; *Zoher* at *3.  There are four factors to review when determining whether a federal statute intended to create a private cause of action.  They are: "(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted-that is, whether the statute creates a federal right in favor of the plaintiff; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether the cause of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law."  *Marks* at *6 (quoting Cort v. Ash, 422 U.S. 6, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

The analysis applied in these cases is the same analysis that should be used in this case when determining whether there is an implied right of action.  Although Plaintiffs may be benefited by the provisions of the EESA and HAMP, the statute is much broader

than these benefits. *Id*. The statutes were enacted to deal with "large-scale economic phenomena" that are affecting the United States. *Marks* at \*7. Next, Allowing a private cause of action under HAMP would disregard the legislative intent behind the Statute and the subsequent Treasury regulations. *Id*. (*citing Alexander v. Sandoval*, 532 U.S. 275, 290, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)). Third, Plaintiff's challenges do not promote the legislature's scheme in enacting the EESA. Freddie Mac is the compliance officer, not the court system. *Marks* at \*7. There are guidelines included within HAMP to correct any issues that may arise. *Id*. Finally, as is outlined in the *Marks* case, modification issues are generally related to state law, which means it is inappropriate to infer a cause of action based on federal law.

For the foregoing reasons, it is clear there is not an express or implied cause of action under the EESA or HAMP. As a result, all of Plaintiffs' Complaint must be dismissed in their entirety.

### III. COUNTS II AND III OF PLAINTIFFS' COMPLAINT MUST BE DISMISSED. DENYING A MORTGAGE MODIFICATION DOES NOT BREACH ANY DUTY THE MORTGAGEE HAS.

It is clear Plaintiffs' Complaint cannot withstand a Motion to Dismiss or Motion for Summary Judgment with regards to their claims that Aurora and MERS somehow breached an implied duty they held to Plaintiffs. Plaintiffs' first claim comes under Minnesota Statutes Section 580.11, which reads:

> The mortgagee, the mortgagee's assignee, or the legal representative of either or both, may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale.

(2011).  There is no requirement either expressly or impliedly in this statute that a mortgagee is required to modify a mortgage prior to foreclosing.  Further, there is no relevant case law holding that the statute requires a mortgage company to modify a mortgage before it can foreclose.  Rather, the relevant Minnesota cases that cite to this statute discuss irregularities in the sale process or a mortgagee's inability to recover a deficiency judgment after foreclosing by advertisement.  *See Allen v. Chatfield*, 8 Minn. 435 (Minn. 1863) (holding that an assignee of a mortgage cannot become a purchaser of the premises at a sale made by hid direction under a power of sale, where his own agent acts as the auctioneer, and makes the certificate and affidavit of sale.)  Clearly, Section 580.11 was not enacted to force a mortgagee to modify a mortgage before it is allowed to invoke its power of sale.  As a result, Count II of Plaintiffs' Complaint fails as a matter of law.

Mr. and Ms. Cox  also claim there is an implied covenant of good faith and fair dealing in the Mortgage and that Defendants breached that covenant when they failed to modify the loan, failed to communicate with him regarding the modification, and refused to release Plaintiffs' loan file to them. (Verified Complaint at pg. 8.)

It is true that virtually all contracts in Minnesota include a covenant of good faith and fair dealing.  *BP Products North America, Inc. v. Twin Cities Stores, Inc.*, 534 F.Supp. 959, 966 (D.Minn. 2007) *citing Minnwest Bank Central v. Flagship Properties, LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004).  In order to establish a violation of

this covenant, the claiming party must prove bad faith by establishing the "adverse party has an ulterior motive for its refusal to perform a contractual duty." *Id*.

Applying this law to the facts of this case, it is clear Plaintiffs' claims fail. In order to prevail against the Defendants, Plaintiffs would need to prove the Trust did not perform some duty under the contract and did so in bad faith or with some ulterior motive. *Id*. Plaintiffs cannot prove the Defendants failed to perform a duty under the Mortgage. The duties allegedly breached by the Defendants, do not actually exist under the terms of the Mortgage. There was no duty to modify the mortgage or turn over the loan file. Rather, the Plaintiffs have unilaterally added these duties into the terms of the Mortgage. Certainly, the Defendants cannot be required to abide by alleged terms of a contract that were added by one party after the Mortgage was negotiated, executed and accepted by all of the contracting parties.

Further, Plaintiffs' allegations that Aurora failed to communicate with them are contrary to the evidence before the Court. There are numerous correspondences before the Court, which prove Aurora did consider Mr. and Ms. Cox for a modification under the federal programs and that Aurora notified Plaintiffs they did not qualify for a modification under HAMP. (Verified Complaint at Ex. A; Aurora Affidavit at Exs. 2-4.) In fact, the evidence shows the reason Plaintiffs were unsuccessful in obtaining a HAMP modification was because they failed to provide the required paperwork. (Id.) A letter was sent to Plaintiffs on June 15, 2010 requesting additional paperwork. (Id.) This letter went unanswered. (Id.) The foreclosure sale happened on October 4, 2010, almost four

11

months after this letter was sent and Plaintiffs took no further action to obtain a modification. Certainly, Defendants cannot be held liable for failing to modify a loan when Plaintiffs refused to provide the documents required by the relevant Treasury guidelines.

The provisions of the Mortgage that Defendants allegedly breached, according to Plaintiffs, do not actually exist in the Mortgage. As a result, the Trust cannot have breached the terms of the Mortgage. Further, because the Trust complied with all of its duties under the Mortgage, the Trust cannot have breached the implied covenant of good faith and fair dealing. Plaintiffs' claims for breach of contract must be dismissed with prejudice.

## IV. PLAINTIFFS CLAIMS FOR NEGLIGENT MISREPRESENTATION MUST BE DISMISSED. DEFENDANTS DID NOT MISREPRESENT ANY INFORMATION TO PLAINTIFFS. NOR WERE PLAINTIFFS DAMAGED BY ANY CONDUCT OF THE DEFENDANTS.

Plaintiffs also assert Defendants negligently misrepresented facts to them and are liable for fraud. Neither claim can withstand this Motion to Dismiss. In order to prevail on a claim for negligent misrepresentation, Mr. and Ms. Cox must prove four elements. First, a plaintiff must show the defendant owed the plaintiff a duty of care in obtaining or communicating information. *Grozdanich v. Leisure Hills Health Center, Inc., 25 F.Supp.2d 953, 990* (D.Minn. 1998). Second, the defendant must have supplied false information, which constituted a breach of that duty of care. *Id.* Next, the plaintiff must have justifiably relied on the false information.

*Id.* Finally, the plaintiff must have suffered damages. *Id.* Plaintiffs cannot prove any of these elements.

Most importantly, Plaintiffs cannot show what false information was supplied to them by Aurora. The Complaint alleges, in relevant part, that Mr. Cox had a December, 2009 conversation with Aurora in which Aurora told him not to make any more payments under the trial modification. Even if that is true, which Aurora denies, Mr. Cox had a conversation with Aurora on January 14, 2009, in which Aurora told Mr. Cox he needed to continue to make payments under the trial period. (Aurora Affidavit at Ex. 1.) Mr. Cox did, in fact, make two more trial payments, but then stopped making payments. (Id. at ¶ 11.) Aurora did not instruct Plaintiffs to quit making payments. (Id.) Plaintiffs stopped making those payments without any instruction from either of the Defendants to do so. (Id.) It is clear that Plaintiffs relied upon Aurora's January 14th instructions, which were true, and that he made two payments in accordance with those instructions. As a result, there is no evidence showing that Aurora misrepresented any facts to Mr. or Ms. Cox or that they relied upon those alleged misrepresentations to their detriment. For these reasons, Count IV of Plaintiffs' Complaint must be dismissed.

## V. PLAINTIFFS' CLAIMS FOR FRAUD MUST BE DISMISSED AS A MATTER OF LAW BECAUSE NO FRAUDULENT REPRESENATATIONS WERE MADE BY EITHER DEFENDANT.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity." (2010). "Circumstances include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir. 1982), *adhered to on reh'g,* 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied,* 464 U.S. 1008 (1983). Because the primary purpose of this Rule is to provide defendants with sufficient notice and opportunity to prepare a defense to charges of fraud, (*Greenwood v. Dittmer,* 776 F.2d 785, 789 (8th Cir. 1985)), conclusory allegations that a defendant's conduct was fraudulent or deceptive are not sufficient to satisfy the Rule. *In re Flight Transp. Corp. Sec. Litig.,* 593 F.Supp. 612, 620 (D. Minn. 1984).

In order to establish and maintain an action for fraud, a plaintiff must show: 1) that the accused made "a false representation of a past or existing material fact susceptible of knowledge, 2) knowing it to be false, or as of his own knowledge without knowing whether it is true or false, 3) with the intention to induce the person to whom it is made to act in reliance upon it, and 4) such person is thereby deceived and induced to act in reliance upon it, to his pecuniary damage." *Hanson v. Ford Motor Co.*, 278 F.2d 586, 591 (8th Cir. 1960) (citing *Swanson v. Domning*, 86 N.W.2d 716, 720 (Minn. 1957)).

Again, Plaintiffs' claims with regard to their fraud claim rest upon two alleged representations by Aurora. The first is the December, 2009 telephone conversation with Aurora discussed in detail above . The second is the March 8, 2010 letter sent from Aurora to Mr. and Ms. Cox. Plaintiffs cannot satisfy the elements of fraud based upon these two representations. As such, this claim must be dismissed. As discussed above,

whether the December, 2009 conversation happened with Terry Martin is irrelevant. First, Aurora denies that it told Plaintiffs to stop making payments under the trial modification at any point. Even if they did, however, Aurora told Mr. Cox on January 14, 2010 that he needed to continue making payments under the trial modification. Plaintiffs relied upon these instructions and made two payments. Even if Plaintiffs were instructed to stop making payments in December, 2009, they were instructed to make payments approximately sixteen days later, and, in fact, did make additional payments pursuant to those instructions. (Aurora Affidavit at ¶ 4.)  For some inexplicable reason, however, Plaintiffs stopped making trial modification payments after the February 1, 2010 payment.  This, along with their failure to provide Aurora with the necessary paperwork resulted in the foreclosure of the Mortgage.  As such, Plaintiffs cannot possibly maintain a claim for damages based upon this alleged December, 2009 conversation.

Further, Plaintiffs cannot show how the March 8, 2010 letter constitutes a fraudulent misrepresentation.  The letter indicates Aurora put Plaintiffs on a 30-day review period.  (Complaint at Ex. B.)  The letter also indicates that Plaintiffs are to continue making their trial plan payments.  (Id.)  Aurora did, in fact, place Mr. and Ms. Cox on this review period.  Aurora then had numerous communications with Plaintiffs asking them for additional documentation, which Aurora never received.  (Id. at Exs. 2-4.)  Further, Mr. and Ms. Cox did not continue to make any payments under the trial modification.  (Id. at ¶¶ 4 and 11.)  Ultimately, Plaintiffs were denied for a permanent

modification because they did not submit the documentation requested. (Id. at Ex. 3.) There is absolutely no evidence of any fraudulent conduct that caused damages to Plaintiffs. Rather, it was Plaintiffs' failure to follow the explicit instructions from Aurora that resulted in the foreclosure of the Mortgage. As a result, Plaintiffs' claim for fraud must be dismissed with prejudice.

## VI. COUNTS I AND XI OF PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THEY ARE IMPROPERLY PLED AND ARE IRRELEVANT IF THE REST OF PLAINTIFFS' COMPLAINT IS DISMISSED.

Count I of Plaintiffs' Complaint requests Aurora turn over its file to Plaintiffs so that they can determine exactly how they have been damaged. Count XI of Plaintiffs' Complaint seeks injunctive relief, which is improperly pled. The proper way to seek injunctive relief is through a motion, which Plaintiffs are doing. As such, if the remaining Counts of the Complaint, Counts II through IV, are dismissed, dismissal of these Counts is also appropriate because they will no longer have any legal significance or merit.

## CONCLUSION

It is clear Plaintiffs' Complaint must be dismissed in its entirety. Plaintiffs' claims fail to state a claim upon which relief can be granted. Despite the fact Plaintiffs have enumerated several state and common law claims, all of those claims relate to the Emergency Economic Stabilization Act of 2008 and HAMP. It is clear there is no private cause of action under HAMP and Plaintiffs' claims must be dismissed. Further, Plaintiffs cannot show there was a breach of any contractual duty. As such, there is no plausible

16

claim for breach of the implied covenant of good faith and fair dealing.  Finally, Plaintiffs cannot prove there were any misrepresentations made by Aurora, either intentionally or negligently.  Neither Defendant is at fault for the foreclosure of the Mortgage.  Rather, it is Plaintiff's actions, or rather their inactions, that caused the foreclosure of the Mortgage to occur.  Plaintiffs should not prevail for their failure to make payments under the Mortgage.  As a result, the Complaint should be dismissed in its entirety with prejudice.

**WILFORD & GESKE, P.A.**

Dated:  March 4, 2011                    By:    s/ Christina M. Weber
                                            Christina M. Weber, #034963X
                                            Attorneys for Defendants
                                            8425 Seasons Parkway, Suite 105
                                            Woodbury, Minnesota 55125
                                            (651) 209-3300