```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
               Civil No. 10-4626(DSD/SER)
```

Gary Cox and Jill Cox,

       Plaintiffs,

v.                                                            **ORDER**

Mortgage Electronic Registration
Systems, Inc., and Aurora Loan
Services, Inc.,

       Defendants.

    Christopher P. Parrington, Esq., Patrick D. Boyle, Esq.,
    Ryan P. Myers, Esq. and Skjold Parrington, PA, 222 South
    Ninth Street, Suite 3220, Minneapolis, MN 55402, counsel
    for plaintiffs.

    Christina M. Weber, Esq., Eric D. Cook, Esq. and Wilford,
    Geske & Cook, PA, 8425 Seasons Parkway, Suite 105,
    Woodbury, MN 55125, counsel for defendants.

       This matter is before the court upon the motion to dismiss[1] by defendants Mortgage Electronic Registration Systems, Inc. (MERS) and Aurora Loan Services, LLC. (Aurora) and the motion for a preliminary injunction[2] by plaintiffs Gary E. Cox and Jill D. Cox.[3]

---

[1] Defendants styled the motion as a motion to dismiss pursuant to Rule 56 of the Federal Rules of Civil Procedure. See ECF No. 4, at 1. Defendants' brief recites the standards of review for motions to dismiss under Rule 12 and motions for summary judgment under Rule 56. The court construes the present motion as a motion to dismiss under Rule 12.

[2] Plaintiffs styled the motion as a motion for "temporary injunction" pursuant to Rule 65 of the Federal Rules of Civil Procedure. A temporary injunction is a state-law remedy. See Minn. R. Civ. P. 65.02. Although the Supreme Court has noted that state law might apply to an injunction in a diversity case, it has
(continued...)

Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants defendants' motion.

## BACKGROUND

This foreclosure dispute arises out of a January 16, 2004, promissory note and mortgage from plaintiffs to nonparty Universal Mortgage Corporation. V. Compl. ¶ 6. Thereafter, Aurora acquired the loan and became the servicer of the note. MERS is the nominal mortgagee. Id. In February 2009, plaintiffs called Aurora to request a loan modification due to financial hardship. Id. ¶ 10. At that time, plaintiffs were current with their mortgage payments. Id. ¶ 12. Aurora informed plaintiffs that they could apply for a home loan modification. Id. ¶ 13. Plaintiffs submitted an application and provided documentation requested by Aurora over the following months. Id. ¶¶ 14, 16.

---

²(...continued)
not so held. See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 319 n.3 (1999). The court need not resolve the question, however, because as detailed below, dismissal is warranted.

³ Plaintiffs are Minnesota citizens. Aurora is a limited-liability company whose sole member, Aurora Bank, FSB, is a citizen of Delaware. See ECF Nos. 32, 34; GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004) (citizenship of LLC is citizenship of its members). MERS is a Delaware corporation with its principal place of business in Virginia. The amount in controversy exceeds $75,000, exclusive of interests and costs.

In September 2009, Aurora notified plaintiffs that they "potentially qualified for a modification" and would be placed on a "Trial Period Plan" during which time they should pay $2,779.38 per month. Id. ¶ 17. On October 1, 2009, and for the next three months, plaintiffs made trial payments in the requisite amount. Id. ¶ 18. On December 28, 2009, plaintiffs contacted Terry Martin, an Aurora employee, who instructed them to discontinue modified payments because they had demonstrated their ability to make payments pursuant to the modification and should wait to receive notice of their modification approval. Id. ¶ 19. Plaintiffs thereafter discontinued payment and "awaited word that their modification had been approved." Id. ¶ 20. On February 4, 2010, Aurora mailed a letter to plaintiffs informing them that it was unable to offer them a "Home Affordable Modification" because the net present value (NPV) calculation did not support modification. Id. ¶ 21; id. Ex. A. The letter stated that "[i]f, within 30 days of receiving this information you provide us with evidence that any of these input values are inaccurate ... we will conduct a new NPV calculation," but "[a]s of the date of this letter, your request for a Home Affordable Modification is considered closed." Id. Ex. A. The letter further stated:

> You should be aware that any pending foreclosure action may be immediately resumed from the date of this letter .... If you do not bring your loan current immediately, any

3

>           foreclosure action will resume.  If you can
>           bring your loan current ... please contact
>           Aurora .... PLEASE ACT NOW TO SAVE YOUR HOME!

Id. The letter also stated: "Depending upon your situation, you might be eligible for other alternatives to foreclosure." Id.

On March 8, 2010, Aurora mailed a letter to plaintiffs, informing them that (1) they "may not be eligible for the Home Affordable Mortgage Program (HAMP) because of Negative NPV;" (2) at the direction of the Treasury Department, their modification request had been placed on a "30 day review period" during which time they should continue to make monthly payments in the amount of the trial period plan payments; (3) at the end of the 30-day period, they would receive additional written communication regarding the status of their modification; and (4) if they were deemed ineligible at the end of the review period, Aurora would work with them to explore other available options. Id. Ex. B. As of March 19, 2010, plaintiffs owed over $30,000 in late payments. See ECF No. 1-1, at 23. On March 24, 2010, non-party Wilford & Geske, P.A., sent plaintiffs a Notice of Mortgage Foreclosure Sale. See V. Compl. Ex. C. On October 4, 2010, the property was sold in a sheriff's sale.

On November 4, 2010, plaintiffs filed this action in state court, alleging claims of accounting, breach of mortgage duty, breach of duty of good faith and fair dealing, fraud and negligent misrepresentation and seeking injunctive relief to stay the

4

foreclosure proceedings.  On November 8, 2010, a state-court judge granted plaintiffs' ex parte motion for a temporary injunction. See Boyle Aff. Ex. A.  Plaintiffs did not file an affidavit of service and defendants did not appear.  Id.  The state court judge set the matter for hearing on November 23, 2010.  On November 16, 2010, defendants removed this action, and moved to dismiss on November 23, 2010.  Id.  On March 4, 2011, plaintiffs moved for a preliminary injunction.  The court now considers the motions.

## DISCUSSION

### I.  Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  See Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action are not

5

sufficient to state a claim." Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings in deciding a motion to dismiss under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court may consider materials "that are part of the public record," Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999), and matters "necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n.4 (8th Cir. 2003).

## II. Loan Modification

The United States Department of the Treasury created the Home Affordable Mortgage Program (HAMP) in response to a directive in the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201–5261. HAMP gives financial incentives to encourage mortgage servicers to modify mortgages. See Williams v. Timothy F. Geithner, No. 09-1959, 2009 WL 3757380, at *2 (D. Minn. Nov. 9, 2009). HAMP imposes several obligations on servicers who choose to participate. Id. at *2-3. Congress vested discretion in the Secretary of Treasury to implement EESA, and HAMP vests considerable discretion in participating servicers. Such discretion precludes an individual homeowner from reasonably claiming that he is entitled to a modification or a reply to a modification request. Id. at *6-7.

As an initial matter, all of plaintiffs' claims implicate HAMP because they all derive from plaintiffs' request for a loan modification, defendants' conduct associated with the request and the ultimate denial of the request. Despite avoiding direct references to HAMP in the verified complaint, the facts pleaded in support of plaintiffs' claims are entirely based on the loan modification request under HAMP. There is no private right of action under HAMP. See McInroy v. BAC Home Loan Servicing, LP, No. Civ. 10-4342, 2011 WL 1770947, at *3 (D. Minn. May 9, 2011). Therefore, dismissal is warranted on this basis alone.

**III. Plaintiffs' Claims**

**A. Accounting**

In count I, plaintiffs allege a claim of "Accounting" and seek an order "requiring a detailed accounting of Defendant's activities related to Plaintiff's request for a forbearance or loan modification." V. Compl. ¶ 34. Plaintiffs claim that defendants failed to comply with "certain responsibilities with respect to processing Plaintiff's repeated requests for loan modification." Id. ¶ 30.

Plaintiffs cite only Vernon J. Rockler & Co., Inc. v. Glickman, Isenberg, Lurie & Co., 273 N.W.2d 647 (Minn. 1978) in support of this claim. That case involves accountant malpractice, not the equitable remedy of accounting. An accounting is an extraordinary equitable remedy. Border State Bank, N.A. v.

7

AgCountry Farm Credit Servs., 535 F.3d 779, 784 (8th Cir. 2008). In the present case, plaintiffs seek "the entire contents of Plaintiff's loan file from Defendant's custody," including:

- a. Any and all records of Plaintiff's attempts to contact Defendants to discuss the status of the Mortgage with Defendants;
- b. Any and all records of payment on the Mortgage received by Defendant;
- c. Any and all correspondence remitted by Defendant to Plaintiff; and
- d. Any and all correspondence remitted by Plaintiff to Defendant.

V. Compl. ¶¶ 32, 34. Plaintiffs' claim for accounting amounts to standard discovery requests, governed by the Federal Rules of Civil Procedure. In short, an adequate remedy at law is available, and dismissal is warranted. Moreover, this request for equitable relief is premised on defendants liability in counts II-V. Because those claims warrant dismissal, the claim for accounting also fails.

**B. Breach of Mortgagee Duty**

In count II, plaintiffs allege a breach of mortgagee duty pursuant to Minnesota Statutes § 580.11. This statute, which relates to foreclosure by advertisement, states that "the

8

mortgagee, the mortgagee's assignee, or the legal representative of either or both, may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale." Minn. Stat. § 580.11. Plaintiffs cite Sprague Nat'l Bank v. Dotty, 415 N.W.2d 725 (Minn. Ct. App. 1987) to support their argument that the statute imposes a general duty of good faith on the mortgagee. Sprague, however, involved the bad faith acts of a lender in purchasing property at a foreclosure sale. Id. The statute itself imposes no fiduciary duty on the mortgagee nor does it concern a mortgagee's actions prior to foreclosure. See Scott v. Wells Fargo Bank, N.A., Civ. No. 10-3368, 2011 WL 381766, at *4 (D. Minn. Feb. 2, 2011). Plaintiffs do not allege that defendants acted unfairly in purchasing the property at the advertised foreclosure sale, only that defendants failed to communicate effectively and to release their loan file.[4] Therefore, this claim fails and dismissal is warranted.

**C.   Good Faith and Fair Dealing**

Under Minnesota law, "every contract includes an implied covenant of good faith and fair dealing requiring that one party not unjustifiably hinder the other party's performance of the contract." In re Hennepin Cnty. 1986 Recycling Bond Litig., 540

---

[4] In their memorandum, plaintiffs cite at length Minnesota Statutes § 58.13. Plaintiffs' complaint does not allege violations of this statute, and the court does not consider arguments related to statutory violations not pleaded in the complaint.

N.W.2d 494, 502 (Minn. 1995) (internal quotation marks omitted). Plaintiffs claim that defendants breached this duty by informing plaintiffs that Aurora might work with them on a loan modification and by failing to release their loan file. See V. Compl. ¶¶ 43-44. Under Minnesota law, "a cause of action for good faith and fair dealing cannot exist independent of the underlying breach of contract claim." Orthomet, Inc. v. A.B. Med., Inc., 990 F.2d 387, 392 (8th Cir. 1993); accord Medtronic, Inc. v. ConvaCare, Inc., 17 F.3d 252, 256 (8th Cir. 1994). Plaintiffs do not assert a breach of contract claim. Moreover, to succeed, plaintiffs must "establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty." Minnwest Bank Cent. v. Flagship Props. LLC, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004). Plaintiffs cite no contractual duty from the mortgage that defendants failed to perform with bad faith or with an ulterior motive. Therefore, this claim fails and dismissal is warranted.

    **D.  Fraud**

Fraud must be pleaded with particularity. See Fed. R. Civ. P. 9(b). To satisfy the heightened pleading requirement, a plaintiff must set forth the "who, what, when, where, and how" of an alleged fraud. United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006). In other words, a plaintiff must plead "the time, place and contents" of the false representations,

the identity of the individual who made the representations and what was obtained thereby. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007).

Under Minnesota law, a plaintiff establishes a claim for fraudulent misrepresentation by establishing that: (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance. See Best Buy Stores, L.P. v. Developers Diversified Realty Corp., 636 F. Supp. 2d 869, 887 (D. Minn. 2009).

Plaintiffs' fraud claims are based on the December 28, 2009, telephone conversation during which an Aurora employee informed plaintiffs that they qualified for a loan modification and the March 8, 2010, letter that informed plaintiffs that their loan had been placed on a 30-day review period under HAMP. In support of this claim, plaintiffs allege that "the representations were false and were intended to defraud Plaintiff" and that "Plaintiff was justifiably induced to and did rely on Defendants' ... representations." V. Compl. ¶¶ 47-48. These bare assertions do not satisfy the Rule 8 pleading standard, much less the heightened

pleading standard imposed under Rule 9. In particular, plaintiffs fail to demonstrate that the statements were made with knowledge of the falsity of the representation, how plaintiffs relied on the statements, and that the false statements caused damages. Therefore, this claim fails and dismissal is warranted.

### E. Negligent Misrepresentation

A person makes a negligent misrepresentation when "(1) in the course of ... a transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information." Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 369 (Minn. 2009) (citation omitted).

Plaintiffs first argue that defendants supplied false information during the December 28, 2009, telephone conversation. Taking as true plaintiffs' account of this conversation, the February 4, 2010 letter states that Aurora was unable to offer plaintiffs a Home Affordable Modification and, as of the date of the letter, their request was considered closed. The letter also informed plaintiffs that they needed to bring their loan current to avoid foreclosure. Plaintiffs plead no facts indicating that they resumed mortgage payments after receiving the February 4 letter.

12

Therefore, to the extent that defendants supplied false information, no reasonable jury could find that plaintiffs were justified in relying upon that information once they received the February 4 letter.

Plaintiffs further argue that defendants supplied false information to plaintiffs on March 8, 2010, when they were informed that the loan had been placed on a 30-day review period. Plaintiffs fail to plead any facts demonstrating that they relied on this information. Instead, plaintiffs state that they believed their application was again under review, and "were shocked" when defendants initiated foreclosure proceedings before the end of the 30-day period. V. Compl. ¶¶ 24, 26. The bare assertion that plaintiffs reasonably relied on the information is not sufficient to survive a motion to dismiss. Therefore, this claim also fails and dismissal is warranted.

**IV.   Preliminary Injunction**

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. <u>Watkins Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a preliminary injunction should issue: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits

and (4) the public interest.  <u>Dataphase Sys., Inc. v. C.L. Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  Likelihood of success on the merits is the "most significant" <u>Dataphase</u> factor. <u>S & M Constructors, Inc. v. Foley Co.</u>, 959 F.2d 97, 98 (8th Cir. 1992).  Here, the court has determined that plaintiffs fail to state a claim upon which relief can be granted.  Therefore, a preliminary injunction is not warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   Defendants' motion to dismiss [ECF No. 4] is granted; and

2.   Plaintiffs' motion for a temporary injunction [ECF No. 11] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated:  June 30, 2011

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court